We have a very interesting docket this week, starting off with an interesting case, but I would like you to take special pains to adhere to the time limits on oral argument. When the yellow light comes on on the podium, you have two minutes left. When the red light comes on, we ask you to conclude your remarks unless you're answering a question from the court. Also, we have read the briefs and record excerpts. We are not necessarily familiar with the entire record, so we appreciate record citations when those are appropriate. The first case is number 2320354, United States v. Chuck Hendricks Smith, and we'll hear from Mr. Howes. Thank you, Judge Jones, and may it please the Court. I'm Evan Howes, and I'm here on behalf of Chuck Hendricks Smith. Now, Your Honors, I want to be clear up front that I'm not here to diminish the severity of Mr. Smith's crime in any way. Enticing a minor to engage in prostitution is detestable. The question for this panel, however, is whether that crime was aggravated in the specific ways contemplated by the undue influence and vulnerable victim enhancements that we've challenged in this appeal. Now, there's also no dispute that LG, the minor victim in this case, was inherently vulnerable to an adult's sexual advances, like all minors, and there's no dispute that Mr. Smith, like all Section 2422B offenders, influenced her to engage in conduct that she couldn't legally consent to, but these enhancements required more. The government had to prove undue influence. It had to prove that LG was unusually vulnerable as compared to the typical victim of this offense, and it had to prove Mr. Smith had actual or constructive knowledge of that special vulnerability. That is where we contend that the record falls short here. As in the briefs, I'll start with the undue influence enhancement, and the critical predicate for finding that a defendant unduly influenced a minor to engage in prostitution is proof that the defendant's words or actions compromised the voluntariness of the minor's behavior, and the application note, in addition to saying that, also specifies that the district court must closely consider the facts of the case to make that determination, and that is why we have zeroed in on the particular facts in this case as opposed to the general aspects of the, I guess, the endeavor of pimping and prostitution as a whole. And so, there are three important things that I wanted to, I guess, explain or elaborate on for the panel in regards to our argument that Mr. Smith's conduct wasn't shown to have unduly influenced or risen to the level of compromising the minor's ability to act voluntarily. The first is that this is not a presumption case. Most of the government's cases, in fact, all but one of the cases that the government relies on are cases that do implicate the presumption where there's a 10-year or more age gap between the offender and the victim. This isn't a case like that. And so, the other important thing about the fact that this isn't a presumption case is that the fact that a court of appeals has held that the defendant, that certain facts were enough to stop the defendant from rebutting that presumption is not the same as saying that those same facts were, in and of themselves, enough to satisfy the enhancement in the absence of the presumption. And I think that's very important here. So, when the government points to things like the fact that LG didn't have very much money and that Mr. Smith had, took control of the money until he paid her some portion of the money, we have no idea how much. The legal presumption attaches at 10 years. Right. Excuse me, Judge Howland. The legal presumption under the sentencing guidelines is at 10 years. Yes. This is an 8-year case. Correct. So, your argument is at 10 years, it's a legal presumption. At 8 years, it's legal, it's clear error? No, I'm not suggesting by the mere fact that she was less than 10, that there was less than 10 years. Right, but you get where I'm going. It seems awkward to say that at 10 years, the government's entitled to a presumption. 8 years and 10 years from the standpoint of a gap in ages is, you know, it's a difference, not a monumental difference. Well, I think, I understand your concern, Judge Howe, and the thing about the 10-year presumption is this is... There's a lot of undue influence at 8 years, too. That's true, but the sentencing commission has to draw a line somewhere, and they've chosen 10 years to afford a presumption. They didn't have to afford a presumption, but they  didn't have to afford a presumption. But isn't that the very point? This is essentially a line-drawing exercise. There's not a huge difference between 10 years and 8 years, but, you know, we draw lines, and that's fine, but as a substantive matter, there's really no significant differences there. Well, the point is, I think, I take your point, Judge Howe, but the thing that's important about... I'm talking about 8 months, is my point. I understand. The thing that's important about the lack of the presumption is that it means the government had the ordinary burden, right? And so the government had to actually put evidence in the record demonstrating that the conduct that Mr. Smith had in relation to this minor compromised the voluntariness of her behavior. Well, he did offer her the opportunity to make money when she had just run away from the home, and she was penniless and on the streets, didn't he? And there's a difference. Ten years, when you're talking 16 and 26 or above, is quite different from 13 and 21. I'll try to take the points in turn, Judge Jones. It is true that she had run away from a foster care facility when he met her. He did not know that when he met her, and she did lie to him, and that is not my term, that's a term in the record, that is the... About her age. Right, about her age, and she didn't say... That doesn't last long. Well, that's true, but it is important in the sense that what happened was she approached him, he said, indicated she needed some money, that she would like to make money. He said, I have a way for you to do it, and she agreed to do that. And as we've pointed out in the case, is that the minor herself, after being completely extracted from the influence of Mr. Smith, and after having had medical exams and speaking to police officers, told police officers that she willingly engaged in the conduct. And so that is different. And so the thing is, in most of these cases, you have, and even in presumption cases, you have extra evidence of the defendant doing something that is physical or psychological manipulation that is likely to overcome a victim's ability to decide whether or not to leave or do, or even engage in the conduct in the first place, or... You don't think this relationship of pimp and 13-year-old is not inherently manipulative? She's living in a, she was willing to live in, spend the night out in a car at his mother's house and that sort of thing? Judge Jones, I am not going to defend the relationship between pimp and prostitute even as among adults, but this, as the Sixth Circuit pointed out in United States v. Davis, this, the very structure of this enhancement recognizes that there has to be some case, some enticement case, where the victim wasn't unduly influenced or where the mere fact of completing the offense doesn't amount to undue influence. And so if, I agree with Your Honor's common sense observation, but if that were enough to implicate this enhancement, then every single Section 2422B case would have this enhancement and we wouldn't... Well, it may be, it may be the fact that as a practical matter, 90% of them do. It, that could be a fact, Judge Jones, but this case is like at least one other case where the Eighth Circuit in United States v. Myers affirmed the district court's decision to not apply the undue influence enhancement and that was, the reason the court did was that the minor, it relied on the minor's own statements and depositions she took, I assume in civil proceedings, where she admitted that she didn't, that the defendant didn't have to do anything to convince her to leave the home that she was at or leave her home and that she anticipated that they would have sex. And so the reason that's important is that when the minor decided to go and was enticed, which is the word of the... I think she said in that case they were going to be married, right? I believe that was the plan, but she also had a plan to do that with another man before that, right? And so, look, nobody is going to claim that, that minors are acting in their right mind or that their decisions in these cases aren't incredibly misguided. The focus of this guideline is on the defendant's conduct and whether the defendant did things, and we don't have the normal things here like violence or intimidating behavior or grooming or fraud or blackmail. He didn't say, if you go back, I'll tell the foster home about what you've been doing while you were here or I'll release embarrassing photos of you. We don't have the... He didn't control what she wore. He didn't... There's no evidence that he said that she couldn't go other places with other people or that she didn't, and there was no evidence that he stopped her from talking to other people while she was with him. And so it's that plus the admission that her conduct was willing, and I do want to emphasize that, Your Honors, that that is different because in, like in Pringler, this court's case in Pringler, for example, and in this court's case in Anderson, what the evidence there showed, the victims themselves testified that they were afraid of leaving or that... Well, this man was known to be dangerous. He had an assault charge. He carried a gun. He dealt drugs. She had been using drugs. There's... Where'd she get those? Hmm. That might be true, Judge Jones, but there's no evidence that the drugs are what caused her or even had a perceptible... No, but a reason... But a district judge could draw that inference for facts, couldn't he? Perhaps, but not on... Not when there's rebutting evidence. Not when there's evidence to suggest the minor's own words that she acted willingly and then other corroborating conduct, like the fact that when she first was extracted, she went back, right? And she also had been with two other men before Mr. Smith, and she left those men. And so what that indicates to me is that she did have the ability to, one, perceive the fact that somebody who is, at least in one instance, offering perverted offers to her is somebody she didn't want to stay with and to leave, right? And so... And of course, she didn't want to leave Mr. Smith from what we can understand and tell. She... He is... He... The thing that he definitely... A job protective should leave him and leave her in his hands. Of course not, Judge Jones. Of course not. All right. Well, let... You know, let's not go too far in what you're saying. And I don't... And I'm not... I'm not trying to go too far. All I'm saying is that there's an evidentiary record here, and the inferences the government is asking the court to draw are very... Are... Require multiple leaps and multiple things that aren't based on evidence. He had a gun, but there's no evidence that he ever used it in a way to control or to suggest that if you leave, you're going to get in trouble, or I would ever use this on you, or even that he used it on others. And so those are the types of things that are present in other cases. I'm mindful of my time, and so I do want to at least address the vulnerable victim enhancement while there's still time on the clock. We, you know, we also contend, and it is... The government has admitted, or at least has not disputed that if... Even if you find that the undue influence enhancement was properly applied, if you find that the victim enhancement was not properly applied, this is a harmful error. There's no claim of harmlessness here. And so we can still prevail if you agree with us that the vulnerable victim enhancement wasn't warranted. And the main... The gist of this argument is that LG was absolutely incredibly susceptible and vulnerable to this type of behavior, but not in a way that differentiated her from all other minors who are also incredibly susceptible and vulnerable to an adult's sexual advances. That's... That's why Section 2422B has a 10-year mandatory minimum, and 1591 has a 15-year mandatory minimum, and this guideline sets the base offense level at 28. And so those characteristics, the things that make minors inherently vulnerable, are already priced into this guideline. And so the question is, is the fact that she ran away by herself, and that the place she ran away from was foster care as opposed to, I guess, a loving nuclear family, does that separate her from other minors who are also still going to be incredibly vulnerable to this conduct? And we contend that the record here doesn't make that distinction. And I do want to note that at least two courts of appeals, the Eighth... Or excuse me, the Tenth and the Ninth Circuit have recognized in cases that runaway status and broken home and difficult life circumstances like that aren't enough to separate a minor from... A given minor from the typical victim of a Section 2422B offense. And that is where this guideline requires the court to look. It requires the court to look at whether or not she was different or special in comparison to other victims who are enticed to engage in prostitution. And that's where the evidence falls short. And so... But one thing I wanted to point out is that the animating principle this court has recognized in these cases is that we have to look at whether this particular minor was less likely to be able to perceive that they were being asked to engage in crime, or was less able to resist because of some disability or cognitive defect. And when you look at this record, that's just not the case. When she went with Mr. Smith in the first place, it was on the understanding that she would be engaging in prostitution. That is a horribly misguided decision, and it is tragic that she was ever in the mental space to even do it. But what it does show is she was able to perceive the criminal behavior and... Your time is up. You have time for rebuttal. Thank you, Judge Jones. Ms. Gowey. May it please the Court. Good morning. Renata Gowey for the United States. The District Court properly applied the adjustments for undue influence and vulnerable victim. The District Court adopted the pre-sentence report and the addenda and the government's response, all of which provided an adequate factual basis for the adjustments. Smith offered no rebuttal evidence, and the findings are not clearly erroneous. Regarding the undue influence, the Court relied on several factors. First, there's MV's age. She was 13 years old, too young to consent to sex. In Mr. Smith's brief, he repeatedly states that her actions were voluntary, as if she were an adult or even a minor above the age of sexual consent, which is 17 in Texas. Not only was she not above the age of consent, but she was under 14, which is an aggravating factor in Texas sexual assault law. There was a significant age difference. This is not a presumption case. That's true, but that does not mean that this Court and the District Court could consider the significant age difference between Smith and the minor victim. The eight-year age difference at their ages, 13 and 21, is more significant, meaningful, and influential than if they had been older, like 42 and 50, as the prosecutor argued in the District Court. There's also Smith's stature and his reputation for dangerousness. He was physically imposing, 6'2", at almost 300 pounds, compared to MV's smaller size. He had a reputation for dangerousness in carrying firearms. MV herself told her court advocate that Smith always carried a gun. Smith controlled the money, transportation, and accommodation, requiring her to sleep outside. Smith engaged in other control, psychological control mechanisms of having sex with her and giving her an expensive gift of a cell phone. The testimony at the probable cause and detention hearing also supports the finding of undue influence. I'd like to point out three points there. The testimony was that the responses to the Amber Alert were that people were fearful of Smith and that he was dangerous. And that's supported also by his criminal record. He had pending charges at the time for terroristic threat, threatening to murder people. There was testimony that MV told authorities that she smoked marijuana while she was with Smith. And then there was testimony that the day before MV left the foster care facility the second time and returned to Smith, she had texted the address of the foster care facility to a person believed to be Smith, which undercuts his testimony that he had nothing to do with that second flight from the foster care facility. This court should give zero credence to MV's comments that she willingly engaged in prostitution for Smith because she needed money or that Smith was a good guy who did not hit her. It has zero relevance to the undue influence finding because she was underage and she was repeatedly sexually abused by Smith and other men. Smith mentioned the Davis case in which the court there, the Sixth Circuit I believe, had mentioned that obviously the fact that there's an undue influence suggests that there are some cases that the enhancement will apply and some that won't. In that case, the victim was 16 years old, above the age of sexual consent in Ohio, which is where that case came from. And that's a big difference between this case, where not only is the person a minor, but she's under the age of sexual consent. The crime of coercion and enticement applies to any victim who was under the age of 18. So in that span, you do have some victims who are above the age of sexual consent and some that are other, some that are not. So that makes, that's a distinction in this case that the court could, did and could rely on. Smith mentions that most of the cases are presumption cases. I'd like to point out the Brooks case that is cited in the briefing, and there the court held, the Ninth Circuit held, that even without the presumption, the enhancement for undue influence would apply because the victims had no money, no job, and as runaways, nowhere to live, which is very similar to this case. And in Myers, the court, the Eighth Circuit, deferred to the district court's finding. In that case, the district court found that the undue influence did not apply, but here, of course, the district court did, and we ask that the court defer to that finding as well. Turning to vulnerable victim, the standard is Smith knew or should have known that MV was particularly susceptible to the criminal conduct. In Myers, a Fifth Circuit case cited in Smith's brief, this court defined should have known as constructive knowledge, the knowledge one should have using reasonable care or diligence. And here, Smith met MV on the street at a gas station near a middle school, and she had only a clear backpack. MV stayed with Smith at his family's home, and his family members knew she was underage. Smith spent about two weeks with MV. During that time, he had sex with her, prostituted her, and he either knew or should have known that she was a 13-year-old runaway, ward of the state, in need of money. In his brief, he makes an argument that age cannot be considered in the vulnerable victim finding. That argument was waived because in the district court, they did not raise that argument, and in fact, the argument in the district court was that age could be a factor if he knew or should have known the age. So, essentially conceding that that's a factor that can be considered. And even if it's not waived, the age argument is under plain error review. It fails under plain error review because this court's precedent in Jenkins and Wilcox is that in some circumstances, age can be considered in the vulnerable victim finding, even if the offense level incorporates age. If there are no questions, then I ask that the court affirm. I just noticed in this case, it caught my eye as I read your brief that you asked for oral argument, and I mention that because the government hardly ever asks for oral the appellee. I wish the government would ask for argument in more cases than you do, but I guess my question was there something particular that you wanted to focus on in terms of the case law or the facts here to present? Don't misunderstand. I'm glad you're here, but I just was wondering about it because it's unusual. Yes, I understand the question. I think it was really, to be candid, the tenor of the appellant's brief. I just thought, you know, the arguments kind of surprised me, and I just thought, well, maybe I'm not really understanding it correctly, and so I thought, well, maybe argument would benefit the court. Although, as I did note in my request for oral argument, that I did think that the court could affirm based on the record as well, so I hope that explains that. That's fine. All right. Thank you. Thanks a lot. Nice to see you anyway. I just have a few brief points to touch upon on rebuttal, Your Honors. All right, so it is true that she was too young to consent. That is true in every single 2422B case. It cannot be something that distinguishes the ordinary influence from the crime at issue here from undue influence, and of course, Ms. Gowey is correct that the age of consent is 17 in Texas, but because the age of consent is 17 in Texas, had he just had sex with a minor who was age 17, he couldn't be guilty of 2422B. 2422B requires the minor to be enticed to engage in criminal sexual activity. That's the words of the statute. Oh, so prostituting herself willingly is not criminal sexual activity? Of course it is. Now I'm going with Ms. Gowey. I don't quite understand all this. Judge Jones, all I'm doing is what I'm responding to is the idea that the mere fact that she couldn't consent matters because in order for this person to have committed the crime, the minor couldn't have consented. It wouldn't have been a crime if she couldn't consent. Of course, LG couldn't consent to being prostituted, and of course, she couldn't consent to having sex because she was only 13. All I'm saying is that the fact that the age of consent issue doesn't differentiate her and doesn't differentiate the influence in a way that's meaningful. Ms. Gowey stated that the minor's own testimony has zero relevance here. I can't understand how that's true. Now I understand that it's hard to believe that a minor can willingly engage in this type of conduct, but there is a difference between conduct that rises to the level of involuntary, meaning it overcame the person's will, and conduct that is influenced in this way. Are you . . . you know, this is so contrary to our moral sense and our common sense, and I understand you have the right to represent your defendant as best you can, which you did by he got a reasonable sentence, but to argue that that was unreasonably high under certain circumstances, doesn't the public defender have some responsibility to the public just the same as the attorney general and the U.S. attorneys do? Of course, Judge Jones, and we are absolutely mindful of that, and in this case, we were mindful of that, and my arguments have been mindful of that throughout the briefs. I talked about how repugnant . . . No, your arguments are nitpicking technicalities. There's nothing that makes cognitive sense about saying that this kid who has thrown herself on the streets after having an unbearable family situation that puts her into foster care, has run away before, has no money, meets a giant guy who says, Honey, I'll take care of you. You need some money? I mean, I'm sorry to be . . . you know, there are cases that deserve to be brought on appeal in the guidelines, and there are cases that don't, and I would just hope that the public defender would have some sense about not pushing the court too far on things. Judge Jones, I'm not trying to push the court too far, and I share your disgust at the behavior here. The guidelines themselves are inherently technical, and the goal of them is to differentiate the types of offenses like this, detestable as they all are . . . Well, the only case you have in your favor is the Eighth Circuit where the district court on a different set of facts ruled in favor of the defendant. The others, if I'm not mistaken, all rule in favor of the government. We are not . . . you and you are coming here to us and asking us to find that the district court clearly erred. And I am cognizant of how difficult that is to do, and I am cognizant of how difficult that is in this case, Your Honors, but we do rely on the arguments we've made in our briefs. There is case law behind those arguments. They aren't frivolous. I understand if the court disagrees with them, and that is, of course, its prerogative, but we have argued this case in good faith, and we continue to ask this court to vacate and remand for resentencing. Thank you, Judge Jones. All right, sir. Panel. Thank you.